UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| BANKERS INSURANCE COMPANY, a Florida corporation,<br><br>            Plaintiff,<br><br>      v.<br><br>A-1 AIR CONDITIONING & HEATING, a partnership; et al.,<br><br>            Defendants. | No.  2:16-cv-00177-JAM-CKD<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
|---|---|
| AND RELATED THIRD PARTY COMPLAINT | |

     This insurance coverage dispute was sparked by a state court lawsuit over a residential fire.  It heated up with a cross-complaint filed against Defendants in the state court action for which Defendants tendered their defense to Bankers Insurance Company ("Bankers").  Bankers further fanned the flames by filing this present action for declaratory relief and it now seeks summary judgment concerning its duties to defend and indemnify the Defendants in the underlying action.  For the reasons described below the Court grants Bankers' Motion for Summary Judgment.

1

I. FACTUAL BACKGROUND

A-1 Air Conditioning & Heating ("A-1") is a sole proprietorship owned by Daniel Edward Michael Webb ("Webb") that installs and services heating and air conditioning equipment. Defendants' Responses to Plaintiff's Separate Statement of Undisputed Facts ("SUF"), ECF No.42, at ¶¶ 10, 27. A-1, Webb, and Daniel Fisher ("Fisher") applied to Bankers for general liability coverage in 2002 and held a Bankers policy from August 2003 to August 2005. SUF ¶¶ 4, 5, 6; Exh. 8. Webb and Fisher also partnered to create Homestead Installations ("Homestead"), a fireplace and stove installation business that incorporated in April 2002 and for which Webb and Fisher were the sole shareholders. Defendants' Opposition at 2; SUF at ¶¶ 8, 11. Although Homestead attempted to secure insurance from Bankers in 2004, Homestead has never been listed as a named insured on a Bankers policy. SUF at ¶¶ 7, 21; Filipoone Decl. at ¶ 6.

In 2004, Fisher—working for Homestead—installed a wood burning stove and flue system at 9753 Ben Hall Drive in Galt, California. SUF at ¶¶ 12, 15, 25. Custom Fireside Shop, Inc. ("Custom") contracted Homestead to perform the work and required Homestead to procure a one million dollar general liability insurance policy naming Custom as an additional insured. SUF at ¶¶ 12, 13. Homestead attempted to apply for this insurance with the Scott Alberts Insurance Agency ("Alberts") through the Alberts' employee Linda Shook ("Shook"). Alberts and Shook then provided Defendants with an ACORD form Certificate of Liability Insurance, which names A-1 and Homestead as insureds, Custom as the certificate holder, and Alberts as the producer. SUF at

2

¶¶ 16, 17; Exh. 7. Around March 28, 2012, the residence in which Fisher installed the above-described stove was destroyed in a fire. SUF at ¶ 18.

## II. PROCEDURAL BACKGROUND

About a year and a half after the fire, Safeco Insurance Company ("Safeco") filed a state lawsuit against several parties, including Custom, due to the fire and the money Safeco paid the insured for damage to the residence. SUF at ¶ 19; Exh. 4. Custom filed a cross-complaint naming Homestead, A-1, Webb, and Fisher, among others. SUF at ¶ 19; Exh. 5. Custom, Homestead, A-1, Webb, and Fisher each tendered their defense to Bankers and requested that Bankers defend and indemnify them in the Safeco lawsuit. SUF at ¶ 20. Bankers filed the present suit in January 2016 seeking a judicial declaration—pursuant to 28 U.S.C. § 2201—that it does not owe a duty to defend or indemnify A-1, Fisher, Webb, Homestead, or Custom in the Safeco suit. Complaint for Declaratory Relief, ECF No. 1. Bankers also named Safeco as a defendant in order for the judgment to bind Safeco. Compl. at ¶ 7. A default was entered against A-1, Homestead, Safeco and Webb on May 25, 2016. ECF No. 11. The default was set aside on June 29, 2016 as to Webb and A-1. ECF No. 14. By stipulation and Court order, Custom was not required to file any responsive pleading and dismissed from this action. ECF Nos. 5 & 6. A-1, Webb, Fisher, and Homestead[1] filed their

---

[1] The default against Homestead was never set aside. Homestead is also admittedly a "dissolved California Corporation." Homestead has no legal basis to oppose this motion for summary judgment and it was not necessary for Bankers to include Homestead as a party in its summary judgment motion.

3

Answer and "cross-complaint"[2] against Alberts and Shook ("Cross-Defendants") alleging that Cross-Defendants failed to secure the requested Bankers insurance coverage and asserting related claims. See Cross-Complaint, ECF No. 15.

Plaintiff filed its Motion for Summary Judgment on January 13, 2017. ECF No. 28. Cross-Defendants requested a continuance of the hearing on the motion, which the Court denied. ECF Nos. 29 & 33. A-1, Webb, Fisher, and Homestead (hereinafter "Defendants") filed an opposition, as did Cross-Defendants. ECF Nos. 40 & 34. Although Plaintiff contests Cross-Defendants' standing to oppose its motion, Plaintiff replied to each opposition. ECF Nos. 43 & 44.

### III. OPINION

#### A. Declaratory Relief

In a suit seeking declaratory judgment pursuant to 28 U.S.C. § 2201, a district court must first inquire whether there is an actual case or controversy within its jurisdiction. Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005). This standard is identical to Article III's constitutional case or controversy requirement and thus determines the court's jurisdiction to award relief. Am. States

---

[2] Defendants named their pleading a "cross-complaint" and assert claims against Alberts and Shook, who are third parties. In federal court, this pleading is a "third-party complaint" under Federal Rule of Civil Procedure 14. A "crossclaim" is a claim asserted by one party against a co-party. Fed. R. Civ. P. 13(g). Throughout this order, all references to the "cross-complaint" are to the "third-party complaint" and reference to "cross-defendants" are to the "third-party defendants."

4

Ins. Co. v. Kearns, 15 F.3d 142, 143 (9th Cir. 1994).

The Ninth Circuit has held that in a declaratory judgment action brought to determine an insurer's duty to defend and indemnify in a pending state court liability suit, the case or controversy requirement is met. Kearns, 15 F.3d at 144 (1994). In this case, the underlying state lawsuit was pending when Bankers' instigated the action and there is no indication in the record that the state case has resolved. The Defendants tendered their defense to Bankers and Bankers—as the present litigation demonstrates—contests its obligations to Defendants. Under Ninth Circuit precedent and the present facts, the case or controversy requirement is met.

The Court must also exercise its discretion to determine whether entertaining the action is proper. Gov't Emp. Ins. Co. v. Dizol, 133 F.3d 1220, 1223 (9th Cir. 1998). Prudential guidance for retention is found in Brillhart v. Excess Ins. Co. of Am. and includes considerations of the needless determination of state law issues, forum shopping, and avoidance of duplicative litigation. Id. at 1223-25 (Citing Brillhart, 316 U.S. 491 (1942)). The Ninth Circuit has indicated that other considerations may be appropriate, such as "whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; [] whether the use of a declaratory action will result in entanglement between the federal and state court systems[;] . . . convenience of the

5

parties[;] and the availability and relative convenience of other remedies." Id. at 1225 n. 5 (quoting Kearns, 15 F.3d at 145 (J. Garth, concurring)).

The Court finds that retention is proper in this case. Defendants have not objected to this Court deciding the action. Although the case turns on state law, it is not an anticipatory lawsuit and there is no indication that Bankers is forum shopping. Bankers is not a party to the underlying litigation and, to the Court's knowledge, there are no parallel state proceedings involving the same issues between the parties. Cf. Chamberlain v. Allstate Ins. Co., 931 F.2d 1361, 1366–67 (9th Cir. 1991) ("[W]hen a party requests declaratory relief in federal court and a suit is pending in state court presenting the same state law issues, there exists a presumption that the entire suit should be heard in state court."). Thus, the Court does not find that declaratory relief is sought for the purposes of procedural fencing, nor that a decision will entangle the federal and state court systems. Further, the declaratory action will settle the controversy and clarify the legal relations between Bankers and Defendants. For these reasons, the Court turns to the merits of the declaratory action.

B.   Summary of Parties' Arguments

Bankers' motion provides several grounds on which this Court might grant summary judgment or adjudication. Bankers argues that Homestead was never a Bankers' insured, that Webb and Fisher were not insured for work they did for Homestead, that A-1 has no coverage apart from Webb because A-1 is a sole proprietorship, that the certificate does not confer coverage to

Custom or the other defendants, and that, even assuming the policies applied, the fire at issue was not an "occurrence" within the policy period. See generally MSJ.

Defendants concede that Homestead was never insured under a Bankers policy, but seem to argue—though it is not at all clear—that Bankers may still owe Defendants a duty to defend and indemnify due to Alberts' ostensible authority to provide them with a Bankers insurance policy. Def. Opp. at 4–5. Defendants do not counter the substantive legal arguments in Bankers' motion and admit that most facts are undisputed. See Def. Opp.; SUF.

Cross-Defendants launch a more substantial attack. First, they argue that the allegation in the underlying cross-complaint (Custom's cross-complaint against A-1, Homestead, Webb, and Fisher in the Safeco lawsuit) that A-1 and Homestead are alter egos creates potential liability on the part of A-1, Fisher, and Webb and thus confers a continuing duty on Bankers. Cross Def. Opp. at 9. Second, they argue that Bankers' policy language is ambiguous as to who is an "insured." Id. at 10–11. Bankers contests Cross-Defendant's standing to oppose its motion herein against the Defendants because this lawsuit does not include a claim or cross-claim between Bankers and Cross-Defendants. Rep. to Cross Def. at 2–4.

As explained below, the undisputed facts show that the Bankers policies do not cover the fire at issue in the underlying lawsuit. Neither Defendants nor Cross-Defendants challenge Bankers' argument that the fire is not an "occurrence" covered by the policies. The relevant material facts on this

7

1  question are undisputed.  SUF ¶¶ 34-36; Cross-Defendants'
2  Response to Plaintiff's Separate Statement of Undisputed Facts,
3  ¶¶ 34-36.  As this determination is dispositive, the Court need
4  not address the arguments raised in the oppositions or whether
5  Cross-Defendants have standing to contest the motion.
6       C.   The Fire is Not an Occurrence Under the Policy
7      This declaratory action concerns the duty to defend and the
8  duty to indemnify.  "The insurer's duty to indemnify runs to
9  claims that are actually covered, in light of the facts proved."
10 Buss v. Super. Ct., 16 Cal.4th 35, 45 (1997).  "By contrast, the
11 insurer's duty to defend runs to claims that are merely
12 potentially covered, in light of facts alleged or otherwise
13 disclosed."  Id. at 46.  This duty is not unlimited; "[i]t
14 extends beyond claims that are actually covered to those that
15 are merely potentially so—but no further."  Id.
16     Insurance policies are interpreted by the rules of
17 construction applicable to contracts.  Borg v. Transamerica Ins.
18 Co., 47 Cal. App. 4th 448, 456 (1996).  The mutual intention of
19 the parties at the time the contract was formed governs its
20 interpretation and such intent is to be inferred, if possible,
21 solely from the written provisions of the contract.  Montrose
22 Chem. Corp. v. Admiral Ins. Co., 10 Cal.4th 645, 666 (1995).
23 "The 'clear and explicit' meaning of these provisions,
24 interpreted in their 'ordinary and popular sense,' controls
25 judicial interpretation unless 'used by the parties in a
26 technical sense, or unless a special meaning is given to them by
27 usage.'"  Id. (citing Cal. Civ. Code §§ 1638, 1644).  "If the
28 meaning a layperson would ascribe to the language of a contract

8

of insurance is clear and unambiguous, a court will apply that meaning." Id. at 666–67. Where there is ambiguity, however, "the language of an insurance policy must be interpreted broadly in order to protect the objectively reasonable expectations of the insured." Borg, 47 Cal. App. 4th at 456.

Bankers issued Commercial General Liability Coverage Policies covering policy periods from August 2, 2003, to August 2, 2004, and August 2, 2004, to August 2, 2005, listing A-1 Heating and Air Conditioning, Edward Webb, and Daniel Fisher as the insured. Exh. 2 & 3. Fisher installed the stove in 2004 and thus Bankers' duties, if any, would arise from these contracts (i.e. if Homestead had been added onto the policies or the policies otherwise extended to Fisher's installation work).

The "Insuring Agreement" of the policies state:

> [The insurer] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . . b. This insurance applies to "bodily injury" and "property damage" only if: . . . (2) The "bodily injury" or "property damage" occurs during the policy period.

Exh. 2 at BIC000238; Exh. 3 at BIC000281.

Each policy contains an "Amendatory Endorsement" modifying the policy's definitions. Exh. 2 at BIC000225; Exh. 3 at BIC000268. The definitions of "occurrence" and "property

///

///

///

9

damage" are modified as follows (emphasis added):

"Occurrence" means an accident which results in "bodily injury" or "property damage" <u>that first occurs</u> during the policy period and is neither expected nor intended by an insured. "Bodily injury" or "property damage" first occurs during the policy period <u>only if</u>: a. The "bodily injury" or "property damage" is <u>first sustained</u> by a person or entity <u>during the policy period as a direct result of an accident that first occurs during the policy period</u>; or b. The "bodily injury" or "property damage" actually is or reasonably should be first apparent during the policy period to an "insured". . . .

"Property damage" means: a. Physical injury to tangible property which is caused by an "occurrence", including all resulting loss of use of that property. <u>All loss of use shall be deemed to occur at the time of the physical injury that caused it</u>; or b. Loss of use of tangible property that is not physical injury, provided such loss of use is caused by an occurrence during the policy period.  All such loss of use shall be deemed to occur at the time of the occurrence that caused it.

<u>Id.</u>  Taking these paragraphs together, the policy unambiguously states that Bankers does not have a duty to defend unless a suit seeks damages from the insured for an accident that occurred during the policy period that caused property damage first sustained during the policy period.

The underlying suit does not meet these requirements.  It is undisputed that the fire and resulting damage occurred in 2012 and the insurance policies expired in 2005.  Safeco's suit against Custom does not allege any property damage prior to that fire.  <u>See</u> Exh. 4 at ¶¶ 8, 22.  Custom's cross-complaint against Defendants does not allege any property damage beyond Safeco's alleged injuries.  <u>See, e.g.</u>, Exh. 5 at ¶ 29.  Based on the allegations in the underlying suit and the unambiguous text of the insurance contracts, the 2012 fire is not covered under the

policies.

The contrast between the facts of this case and those in Borg v. Transamerica Ins. Co. is instructive.  In Borg, the policy at issue defined "occurrence" as "an accident, including exposure to conditions, which results, during the policy period, in . . . property damage," which, in turn, was defined as "physical injury to, destruction of, or loss of use of tangible property."  47 Cal. App. 4th at 456.  The case turned on whether Transamerica owed Borg a duty to defend for damage to his neighbor's property even though the damage was attributable to an occurrence predating the Transamerica policy period.  The Borg court concluded that the policy only required "the property damage itself [to] take place during the policy period to trigger coverage; the 'occurrence' that was the ultimate cause of this damage need not have taken place during the term of the policy."  Id.  It noted: "[T]here is nothing in the policy requiring that the damage first appear during the policy term in order for it to be covered."  Id.  Thus, because the complaint in the underlying lawsuit alleged continuous property damage, the damage fell within the ambit of the policy and triggered the duty to defend.

Here, the Bankers' policies are clear that the damage must first be sustained during the policy period.  Likewise, the occurrence causing the damage must first occur during the policy period.  Because the underlying suit contains no such allegations, there is no potential for coverage and the duty to defend does not arise.  On this reasoning it further follows that Bankers has no duty to indemnify Defendants in the

11

underlying lawsuit.

## IV.  ORDER

For the reasons set forth above, Bankers' Motion for Summary Judgment on all its claims is GRANTED.

Dated: March 23, 2017

JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE